UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN L. DAVIDSON,

                                        Plaintiff,

                -vs-

                                                        05-CV-502C(F)

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                                        Defendant.

_____

        Plaintiff John L. Davidson initiated this action pursuant to Section 405(g) of the

Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the

Commissioner of Social Security (the "Commissioner") denying plaintiff's application for

Social Security disability insurance ("SSDI") benefits.  Both parties have filed motions for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

(Items 5 & 7).  For the following reasons, the Commissioner's motion is denied, and

plaintiff's motion is granted.


## BACKGROUND

        Plaintiff was born on June 4, 1954 (see Tr. 37).[2]  He applied for SSDI benefits on

February 24, 2003 (Tr. 37-43), alleging disability as of July 27, 2001, due to back and neck

_____

        [1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is
thus substituted as defendant in this case.  *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. 405(g).

        [2]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint.

pain, rotator cuff injury, knee and ankle problems, kidney problems, diabetes, and high blood pressure  (Tr. 40, 52, 294).

By notice dated May 28, 2003, plaintiff was informed that his application had been denied (Tr. 19-22).  Plaintiff requested a hearing, which was held on December 17, 2004 before Administrative Law Judge ("ALJ") Richard A. Kelly (Tr. 287-312).  Plaintiff testified and was represented by counsel at the hearing.  Jay Steinbrenner, Ph.D., a vocational expert, also testified at the hearing.

By decision dated January 21, 2005, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 12-17).  Following the sequential evaluation process outlined in the Social Security Administration Regulations (*see* 20 C.F.R. § 404.1520), the ALJ reviewed the medical evidence and determined that plaintiff's impairments (including lumbar disc bulge and small lumbar disc herniation, degenerative disc disease of the cervical spine, and right shoulder impairment), while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ considered plaintiff's allegations and testimony regarding his functional limitations, but found plaintiff to be "not totally credible" in this regard (Tr. 17).  The ALJ then found that plaintiff had the residual functional capacity for a range of light work[3] involving limited overhead reaching with the right upper extremity

---

[3]The Regulations define "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(Tr. 16).  Relying on the vocational expert's testimony that plaintiff's impairments did not preclude plaintiff from performing his past relevant work as a campus policeman (*see* Tr. 305-10), the ALJ found that plaintiff was not disabled (Tr. 16).  The ALJ's decision became the Commissioner's final determination on June 20, 2005, when the Appeals Council denied plaintiff's request for review (Tr. 5-8).

Plaintiff then filed this action on July 21, 2005, and both parties subsequently moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to properly evaluate the opinion of plaintiff's treating physician, Dr. Kenneth Guth, regarding plaintiff's residual functional capacity (*see* Item 7).    The Commissioner contends that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 6).

For the reasons that follow, the Commissioner's motion for judgment on the pleadings is denied, and plaintiff's motion for judgment on the pleadings is granted.

## DISCUSSION

I.    **Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v.*

20 C.F.R. § 404.1567(b).

*Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence.  *Tejada*, 167 F.3d at 773.

## II.  Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  As alluded to above, the Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

In this case, as discussed above, the ALJ's analysis concluded at the fourth step of the sequential evaluation process when he determined that plaintiff retained the residual functional capacity for light work, which would allow him to return to his past relevant job as a campus policeman (T. 15-16).  In his motion for judgment on the pleadings, plaintiff contends that the ALJ failed to give the proper weight to the opinion his treating primary

care physician, Dr. Guth, which indicates that plaintiff did not retain the residual functional capacity to engage in substantial gainful employment.   What follows is the court's assessment of this contention in light of the rules which the ALJ must follow in evaluating treating source opinion evidence, as set forth in the Regulations and controlling case law.

## III.   Evaluation of Medical Opinion Evidence

The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  This requirement is based on the Social Security Administration's recognition that treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  *Clark v. Commissioner of Soc. Sec.*, 143

F.3d 115, 118 (2d Cir. 1998).  The ALJ must "always give good reasons" in the notice of

determination or decision for the weight given to the treating source's opinion, 20 C.F.R.

§ 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent

medical opinion."  *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v.

Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

> As explained by the Social Security Administration, when the ALJ's determination:
> is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or
> decision must contain specific reasons for the weight given to the treating
> source's medical opinion, supported by the evidence in the case record, and
> must be sufficiently specific to make clear to any subsequent reviewers the
> weight the adjudicator gave to the treating source's medical opinion and the
> reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

> The Regulations further provide that:

> When an administrative law judge considers findings of a State agency
> medical or psychological consultant or other program physician or
> psychologist, the administrative law judge will evaluate the findings using
> relevant factors in paragraphs (a) through (e) of this section, such as the
> physician's or psychologist's medical specialty and expertise in our rules, the
> supporting evidence in the case record, supporting explanations provided by
> the physician or psychologist, and any other factors relevant to the weighing
> of the opinions.  Unless the treating source's opinion is given controlling
> weight, the administrative law judge must explain in the decision the weight
> given to the opinions of a State agency medical or psychological consultant
> or other program physician or psychologist, as the administrative law judge
> must do for any opinions from treating sources, nontreating sources, and
> other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(f)(2)(ii).

In this case, the record indicates that Dr. Guth has been plaintiff's primary care

physician since approximately August 2001 (Tr. 206), following a work-related motor

vehicle accident in which plaintiff sustained injuries to his neck, right shoulder, and left

ankle.  Dr. Guth referred plaintiff to Dr. Michael Grant for orthopedic consultation in

September 2001, at which time Dr. Grant found plaintiff to be totally disabled (see Tr. 141-42).[4]   In February 2002, Dr. Grant performed arthroscopic surgery on plaintiff's right shoulder, along with debridement of a partial torn right rotator cuff (Tr. 130-31).  Dr. Grant continued to see plaintiff for his shoulder problems through July 2004, at which time Dr. Grant reported to Dr. Guth that plaintiff remained "essentially unchanged and unimproved" and was still "totally disabled" (Tr. 260).

In approximately April 2002, Dr. Grant referred plaintiff to Dr. Loubert Suddaby for neurological consultation to assess "ongoing problems with neck pain and low back pain, as well as some intermittent pain in his right leg" (Tr. 107).  Dr. Suddaby performed an epidural nerve block in May 2002, which provided only limited pain relief (see Tr. 104-05). Upon follow-up in June 2002, Dr. Suddaby reviewed an MRI scan of plaintiff's lumbar spine, which showed evidence of moderate spinal stenosis at L4-5, secondary to a central disc extrusion (Tr. 103-04).  An MRI scan of the cervical spine was also performed, which showed evidence of paracentral disc herniation at C4-5, posterior spur formation with central disc herniation at C5-6, and posterior spur formation at C6-7, all associated with mild to moderate stenosis (id.).  Dr. Suddaby stated that plaintiff "continues to be disabled from work because of ongoing pain" (Tr. 104).  He recommended lumbar laminectomy, diskectomy, and fusion surgery, but noted plaintiff's reluctance to have these surgical procedures performed.  As an alternative, Dr. Suddaby recommended that plaintiff see Dr. Waghmarae for pain management (id.).

---

[4]The medical record indicates that Dr. Grant also treated plaintiff for earlier work-related injuries sustained in April 1992 (struck by car, left knee sprain; see Tr. 166-72), October 1992 (truck rollover, fractured right forearm and ribs; see Tr. 151-65), and January 1994 (right forearm sprain; see Tr. 149-50).

The record indicates that plaintiff saw Dr. Waghmarae on several occasions between July 2002 and February 2003 (Tr. 109-20).   Plaintiff underwent a series of sphenopalatine ganglion blocks, which provided good relief.   Dr. Waghmarae recommended a "root sleeve block" (Tr. 109), but there is no record of this procedure.

Dr. Suddaby reported in July 2003 that plaintiff continued to have back and leg pain despite the pain management therapy with Dr. Waghmarae.  He had moderate restriction in range of motion of his lumbar spine, but was "otherwise neurologically intact" (Tr. 283). Plaintiff indicated his consent to the lumbar laminectomy and disckectomy surgery (*id.*). However, when he saw plaintiff again in March 2004, Dr. Suddaby reported that plaintiff had changed his mind about the surgery (Tr. 282).  Dr Suddaby stated:

> I've made the recommendations to him that he return to work, but he does not want to return to work.   My personal opinion is under these circumstances I really don't have faith that this man has any interest of getting better.   His interest seems to be solely to obtain disability.  I have discharged him from my care and I've recommended that he return to Dr. Guth to find another neurosurgeon.

(*Id.*).

Dr. Guth's treatment notes indicate that he saw plaintiff on several occasions between August 2001 and November 2004 (Tr. 173-76, 199-225).   As of January 20, 2004, plaintiff continued to have ongoing back pain, radiating to his legs.   Objective findings indicated pain on straight-leg raising.  He was diagnosed as having lumbo-sacral disc disease with intolerable back pain, and was listed as totally disabled from any occupation (Tr. 206).  Dr. Guth indicated that the disability began as of the date of his injury in July 2001, with an indefinite return date.  He was totally restricted with respect to lifting

and bending, and partially restricted with respect to walking, standing, sitting, driving, reaching, and climbing stairs (Tr. 207).

Upon examination of plaintiff on May 24, 2004, Dr. Guth filled out a "Medical Report for Determination of Disability" which indicated that since the work-related injury in July 2001, plaintiff was unable to perform work at any exertional level due to back pain caused by disc disease of the lumbo-sacral spine (Tr. 198). Dr. Guth indicated that while plaintiff could be expected to recover at least in part, significant improvement of his condition was not likely (Tr. 199).

On November 12, 2004, Dr. Guth reported:

I would recommend at this point that this patient still remain rated as totally disabled, due to the uncertainty regarding his ability to return to any level of employment at this time. My concerns would be in regards to the possibility of further injury with any attempts towards repetitive lifting, and the inability to frequently change positions throughout the day.

(Tr. 276). Dr. Guth further indicated that:

In regards to this patient's current back problems, it would be my opinion that from an exertional standpoint Mr. Davidson could not perform anything other than sedentary employment. If he were to attempt such employment, he would need to lie down for approximately one and a half to two hours each workday, and be able to sit or stand at will for that balance of his day as well. He would be unable to lift more than five pounds as well.

It remains my opinion that the restrictions listed above are consistent with and caused by the objective medical findings of his health record and have existed since his accident of July 27, 2001.

(Tr. 277).

In his written determination in this case, ALJ Kelly did not discuss the evidence in the record pertaining to plaintiff's course of treatment with Dr. Guth. Instead, the ALJ referred only to Dr. Guth's opinion that plaintiff could perform sedentary work (Tr. 16),

without even mentioning the additional restrictions discussed by Dr. Guth in his November 12, 2004 report.  Nor did the ALJ mention Dr. Guth's reports of January 20 and May 24, 2004, both indicating plaintiff's total disability from any exertional level of work since his injury in July 2001.  Rather, the ALJ found that, "[g]iven the normal neurological findings and the claimant's normal gait, the [ALJ] concludes that a residual functional capacity for light exertional work that involves limited overhead reaching with the right upper extremity is more commensurate with the claimant's retained level of function" (Tr. 16).

In reaching this conclusion, the ALJ relied on the residual functional capacity assessment conducted by an unidentified State agency examiner on May 22, 2003, which indicated "RFC for light with restrictions as noted" (Tr. 196; *see also* Tr. 15).  The ALJ also referred to the one-time consultative examination by Dr. Christine Holland, conducted on April 9, 2003 (Tr. 187-91), which indicated "inconsistent findings . . . regarding [plaintiff]'s musculoskeletal functioning" (Tr. 15).   However, the ALJ did not indicate whether he considered any of the relevant factors set forth in the Regulations for weighing consultative opinions against the opinions of plaintiff's treating sources, such as whether the State agency examiner or the medical consultant had any particular specialties or expertise in the rules for making SSDI determinations.  In this court's view, this falls far short of the requirement that, when the ALJ credits the opinions provided by consultants or other nontreating sources over treating source opinions which reflect medical judgments about the nature and severity of a claimant's impairments, the written decision must make the ALJ's reasons sufficiently clear to allow for meaningful review.

Not only does the ALJ's decision lack the required specificity, his assessment of plaintiff's residual functional capacity was based upon an erroneous application of the rules for considering treating source opinions.  For example, there is no indication in the ALJ's decision that he gave any consideration whatsoever to the frequency of Dr. Guth's examination of plaintiff, or the length, nature, and extent of the treatment relationship. Likewise, there is no indication that the ALJ gave any weight at all to Dr. Guth's opinion-- clearly expressed and supported by the evidence in the case record--that plaintiff had remained unable to perform work at any exertional level since his injury in July 2001.

The ALJ did indicate that he gave "limited weight" to Dr. Grant's opinion that plaintiff was disabled, for the reason that Dr. Grant saw plaintiff exclusively for his right shoulder problem and found only "limited mobility" which, in the ALJ's view, "would not render the claimant fully disabled" (Tr. 15).  However, the ALJ's decision contains no discussion of Dr. Grant's orthopedic evaluations of plaintiff over the course of their long-term treating relationship, or any other factors that might be considered relevant to Dr. Grant's opinion, reiterated on several occasions, that plaintiff had remained totally disabled since July 2001.

In any event, it is not the role of the ALJ "to substitute his own expertise or view of the medical proof for the treating physician's opinion."  *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir. 2000) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).  In determining that Dr. Grant's observations did not support a finding of total disability, "the ALJ plainly did not choose between properly submitted medical opinions, but rather improperly set his own expertise against that of [the treating] physician . . . '"  *Balsamo*, 142 F.3d at 81 (internal quotations omitted).

It is true that the ALJ found some limited support for his conclusions about plaintiff's ability to perform work in the reports submitted by Dr. Suddaby, the neurosurgeon who followed plaintiff for his back problems but discharged him after he changed his mind about undergoing surgery.  However, once again the ALJ's decision contains no discussion of the length, nature, or extent of the treating relationship between plaintiff and Dr. Suddaby, and no clear explanation as to why Dr. Suddaby's opinion should be accorded more weight than the opinions of Drs. Guth and Grant.

Based on this analysis, and upon careful review of the entire administrative record and the ALJ's decision, the court finds that the ALJ's determination was based on an erroneous application of the regulatory requirements for assessing the medical opinions of the claimant's treating sources, with the result that the ALJ improperly disregarded highly probative evidence of plaintiff's disability--namely, the opinions of Dr. Guth and Dr. Grant reflecting their judgments about the nature and severity of plaintiff's impairments, as well as plaintiff's residual functional capacity to engage in substantial gainful employment.  This error also resulted in the presentation of hypothetical questions to Mr. Steinbrenner, the vocational expert who testified at the hearing, which did not reflect the full extent of the plaintiff's capabilities and impairments. *See Mikol v. Barnhart*, 494 F. Supp. 2d 211, 226 (S.D.N.Y. 2007) (vocational expert testimony constitutes substantial evidence to support ALJ's findings only when based on properly phrased hypothetical questions which reflect full extent of claimant's capabilities and impairments); *see also Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002) (vocational expert testimony "is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.").

As counseled by the Second Circuit:

[W]e emphasize that under the regulations, *see* 20 C.F.R. § 404.1527(d)(2), the Commissioner is required to provide "good reasons" for the weight [ ]he gives to the treating source's opinion. This requirement greatly assists our review of the Commissioner's decision and "let[s] claimants understand the disposition of their cases."   We do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Accordingly, this matter is remanded to the Commissioner for reconsideration of plaintiff's claim under the regulatory requirements and legal principles discussed herein.

## **CONCLUSION**

For the foregoing reasons, the court concludes that the ALJ's determination was based on an erroneous view of the standards for assessing the medical opinions of treating sources, with the result that the ALJ improperly disregarded highly probative evidence of plaintiff's eligibility for disability insurance benefits and relied upon vocational expert testimony which did not reflect the full range of plaintiff's limitations.   Accordingly, the Commissioner's motion for judgment on the pleadings (Item 5) is denied, plaintiff's cross-motion for judgment on the pleadings (Item 7) is granted, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to be conducted in accordance with the matters set forth above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   September     27     , 2007
p:\opinions\05-502.sep2407